In the Matter of the Petition of MARY REIMERS, Petitioner, to Obtain a Determination as to the Validity, Construction or Effect of Certain Dispositions of Property Contained in the Last Will and Testament of PETER BLASIUS, Late of the County of Kings, Deceased.

Surrogate's Court, Kings County, September 4, 1929.

*Harold St. L. O'Dougherty*, for the petitioner.

*Frederick W. Klein*, special guardian for Elizabeth Frances Sharnberger and others, infants.

WINGATE, S. This is an application by an executrix for a construction of the will of decedent and a determination of the validity of certain of its provisions. Eight numbered questions are propounded and as all are of present moment to enable the executrix to proceed with the orderly administration of the estate, all will be considered.

The present will was admitted to probate in this court on February 8, 1929. It is somewhat unusual in form and content. Of its seven numbered paragraphs, five contain specific bequests, the sixth provides for succession to such bequests in the event of the predecease of certain beneficiaries, and the seventh appoints the executrix. There is no residuary clause, in consequence of which it must be determined that testator died intestate in respect to any residue which may be found to exist either as a result of an excess of property over that necessary to pay debts, administration expenses and specific bequests or in consequence of the lapse or invalidity of any of the latter.

In the paragraph numbered "First," testator gives the sum of $500 " in trust, nevertheless, to be used toward the maintenance and care of our family cemetery plot." The special guardian has challenged the validity of this bequest on the ground that it creates a trust in perpetuity. This objection is without merit in view of the enactment contained in section 13-a of the Personal Property Law.* (*Matter of Arnold*, 127 Misc. 579; *Matter of Fellion*, 132 id. 805.) This section provides in substance that bequests of personal property for the care of private burial plots shall be deemed to be for charitable and benevolent uses " and shall not be deemed to be invalid by reason of any indefiniteness or uncertainty of the persons designated as beneficiaries in the instrument erecting the same, nor shall they be deemed invalid as violating any existing laws against perpetuities  *  *  *."

This enactment extends to bequests for cemetery care the same protection which has long been thrown about general charitable bequests, the language being substantially identical. This language has received frequent construction by the courts and it has been uniformly held that it is essential to the validity of every testamentary trust that there shall be a beneficiary either named or capable of being ascertained within the rules of law applicable in such cases. (*Matter of Shattuck*, 193 N. Y. 446; *Tilden* v. *Green*, 130 id. 29; *Matter of Robinson*, 203 id. 380; *Read* v. *Williams*, 125 id. 560; *Fosdick* v. *Town of Hempstead*, 125 id. 581; *Matter of Compton*, 72 Misc. 289.)

The testimony introduced on the hearing herein is unsatisfactory and inconclusive on this subject. It was testified that testator was buried in the plot of a " Mrs. Schaumberger " in Mount Olivet Cemetery. Who this Mrs. Schaumberger may be was not made to appear. A " Gussie Sharnberger " is mentioned in the will as a daughter and an " Elizabeth Frances Sharnberger " as a granddaughter. It seems probable, from the similarity of names, that

---

* Added by Laws of 1909, chap. 218, as amd, by Laws of 1911, chap. 430.— [Rep.

one or the other may be the owner of the plot in which testator's remains are interred. It is further conceivable, if such be the fact, that testator considered such plot the "family cemetery plot." The only additional light thrown on the subject by the record is the testimony of the executrix that testator had on some occasion expressed a wish to be buried near a friend named "Mike," whose surname does not appear, and that she did not know whether or not testator at his death had any cemetery plot standing in his name.

The foregoing is entirely inconclusive and all that can be said on this phase of the subject is that the bequest in paragraph "First" of the will is valid provided the identity and locus of the cemetery plot referred to can be determined, on which subject further testimony must be taken.

The next three questions relate to the paragraph of the will numbered "Second," which bequeaths the "proceeds" of three specified mortgages to his "children and grandchildren" in varying designated amounts. The first eight payments are directed to named sons and daughters and the next three to a named grandson and two named granddaughters. Then follow three bequests each reading as follows: " .......... Melvin, my ............ to receive Three Hundred ($300) Dollars at the age of twenty-one years." The final clause of this paragraph reads: " The balance of Two thousand Fifty ($2,050) Dollars I give to my executrix, Mary Blasius hereinafter named."

One of the mortgages is stated as "$3,000 on 2844 Central Avenue, Glendale, Long Island." It appears that at the time of drawing the will testator had a mortgage in this sum on 2842 Central avenue, Glendale, but that thereafter and prior to his death it was increased to $4,500, at which sum it now stands. Another mortgage referred to in this paragraph is of "$6,000 on 2844 Central Avenue, Glendale, Long Island," which was in the hands of testator at the time of his death. The third mortgage referred to is described in the will as "$1,100 on 124 Noble Street, Brooklyn, N. Y." At the time of his decease testator owned a mortgage in this sum on 120 Noble street, Brooklyn, N. Y., bearing date prior to the execution of the will. Since it does not appear that testator ever owned any other mortgages on property on Central avenue or Noble street, it is reasonably apparent that he intended that the bequests in this "Second" paragraph should be paid from the mortgages which he owned on 120 Noble street and on 2842 and 2844 Central avenue, which latter he may well have considered as a single property. Since the intention respecting the identity of the property from which these legacies are to be paid is reasonably apparent,

slight inaccuracies of description will be disregarded. (*Matter of Peoples Trust Co.*, 106 Misc. 609; *Govin* v. *Metz*, 79 Hun, 461; *Gallagher* v. *Quinlan*, 10 App. Div. 402.) In the last cited case the Appellate Division of this Department states the basis of decision in such cases as follows: " The general rule applicable to errors of the kind that has occurred in this will is *falsa demonstratio non nocet*. As to this rule, it is said by Mr. Jarman that it ' means that where the description is made up of more than one part, and one part is true, but the other false, there, if the part which is true describe the subject with sufficient legal certainty, the untrue part will be rejected and will not vitiate the devise.' "

It is, therefore, determined that testator's references in the second paragraph of his will were intended to cover the following mortgages which he then owned of $6,000 on 2844 Central avenue, $3,000 on 2842 Central avenue and $1,100 on 120 Noble street.

It has been noted that subsequent to the execution of the will the $3,000 mortgage was increased to $4,500, but it is clear on the authorities that this act did not effect an ademption and that the substantial security will replace the one held by the testator at the time of the execution of the will. (*Doughty* v. *Stilwell*, 1 Bradf. Sur. 300; *Walton* v. *Walton*, 7 Johns. Ch. 258; *Gardner* v. *Printup*, 2 Barb. 83; *Brown* v. *Brown*, 16 id. 569; *Matter of Howard*, 46 Misc. 204; *Waldo* v. *Hayes*, 96 App. Div. 454.)

In the case last cited testatrix bequeathed her diamond brooch to H., and all her other jewelry to L. Subsequent to the time of making the will she disposed of her brooch, but shortly prior to her decease acquired another. The court, in holding that the legatee of the brooch should receive it in preference to the legatee of all the other jewelry, says (at p. 456): " The courts of this State have uniformly held  *  *  *  that as to personalty the will of a testator speaks as of the date of the death of the testator, and that any article of personal property which the testator owns at the time of his death, which answers to the description of an article bequeathed, passes under the will to the legatee named therein, although such article may not be the identical article owned by the testator at the time the will was executed."

Having determined that the fund from which the legacies are to be paid is composed of the three mortgages as existing at the time of testator's death, there remains for consideration the identity of the beneficiaries and the amounts to which they are severally entitled.

As noted, the proceeds are expressly bequeathed to testator's " children and grandchildren." The first eight individuals named are children. Then follow three named grandchildren and then

follow the three Melvin bequests which are incomplete as above noted.

It appears from the testimony that at the time of the making of the will testator's daughter Catherine Blasius Melvin had three children, Robert Melvin, Edward Melvin and Charles Melvin, and that subsequent to such execution she had an additional child, Irene Melvin, all four of whom were living at the time of testator's death.

Applying these facts to the provisions of the will, the conclusion is irresistible that it was the intention of testator to give legacies of $300 to each of his then living grandsons, the children of his daughter Catherine, namely, Robert, Edward and Charles Melvin.

The remaining question under this paragraph concerns the sum payable to Mary Blasius. The language here is: "The balance of Two thousand Fifty ($2,050) Dollars I give to my executrix, Mary Blasius hereinafter named." The total of the legacies previously given in this paragraph amounts to $8,550. The total of the designated mortgages at the time of the execution of the will was $10,100, and at the time of the death $11,600, leaving a balance, not of $2,050, as stated, but of $1,550 on the former and $3,050 on the latter basis. It, therefore, becomes necessary to determine whether testator's paramount intent in this connection was that his sister should receive the "balance" of the proceeds of these securities or that she should receive the specified amount of $2,050. That the former is the fact seems reasonably apparent. The testator was dedicating the proceeds of these mortgages to certain of his kin. After the specification of the amounts which he wished each to receive there was a balance for disposal and it was this balance for which he here wished to make provision. That the amount of such balance was a matter of secondary importance seems clear from the fact of his failure to give the question sufficient attention to correctly make a simple arithmetical calculation. Results similar to the one here attained have been reached on somewhat analogous states of fact in a number of jurisdictions, although no New York case involving the precise point has been called to the attention of the court. (*Hertford* v. *Harned,* 185 Ind. 213; *Lewis' Heirs* v. *Singleton's Heirs,* 8 Ky. 523; *Cundiff* v. *Seaton,* 20 Ky. L. R. 1271; *Bishop* v. *Morgan,* 82 Ill. 351; *Douglas* v. *Blackford,* 7 Md. 8; *Martin* v. *Smith,* 124 Mass. 111; *Waldron* v. *Waldron,* 45 Mich. 350; *Thomson* v. *Thomson,* 115 Mo. 56; *Drew* v. *Drew,* 28 N. H. 489.) This determination is further strengthened by the well-established rule that a construction leading to partial intestacy will not be favored. (*Williams* v. *Petit,* 138 App. Div. 394; *Simpson* v. *Trust Co. of America,* 129 id. 200; *Nolan* v. *Nolan,* 169 id.

372; *Matter of Hunt,* 207 id. 127; affd., 237 N. Y. 613.) Since, therefore, the will speaks from the date of the death of the testator, his sister, Mary Blasius, is entitled to receive the balance of the proceeds of the specified mortgages as existing at the time of the death, after payment of the previously enumerated amounts.

The " Third " and " Fourth " paragraphs of the will, in so far as material, give testator's wife " free rent of the first floor of premises #121 Norman Avenue, as long as she lives," and devise and bequeath to testator's three sons the fee of the premises and the undertaking business at this address " with the provision that they give my wife and their mother a monthly income of Seventy-five ($75) Dollars." These clauses give Margaret Blasius the first floor of the specified premises rent free and the monthly sum of seventy-five dollars for life, the former being a charge on the devise and the latter on both the devise and bequest. (*Hawley* v. *James,* 5 Paige, 318; *Gifford* v. *Rising,* 51 Hun, 1; *Borst* v. *Crommie,* 19 id. 209; *Walker* v. *Downer,* 55 id. 75; *Lasher* v. *Lasher,* 13 Barb. 106; *Dodge* v. *Manning,* 1 N. Y. 298; *Thurber* v. *Chambers,* 4 Hun, 721; affd., 66 N. Y. 42.)

The final question relates to paragraph " Fifth " of the will in which testator devises to each of two named daughters " one lot in Jamaica, New York, located in Block ......, Lot ......, Section........." It was testified that at the time of his death testator owned two lots in Jamaica which he inherited from one Katie Obergfeld whose will was probated in this court on August 15, 1922. It seems apparent that testator intended to devise these two lots by the provisions contained in this paragraph.

Proceed accordingly.