Burke, J. (dissenting).
The suspension, of the power of alienation for more than two lives in being is prohibited, with certain exceptions not here pertinent, by statute (Personal Property Law, § 11). Although the Legislature has ameliorated the harshness of this rule under certain circumstances, since the amendment is prospective in nature, it is inapplicable to the trust under consideration (L. 1958, ch, 152). Consequently, it would appear that the trust is invalid, since it is measured by three lives in being at the time of its creation: the life of settlor’s first wife, and the lives of the twin children.
The phraseology of the indenture precludes our measuring the trust by the life of the settlor and considering the sums *923 payable to the wife and children as annuities. The sums allocated for the maintenance and support of the children are to be applied to their use and benefit by the trustee in the event of the death of the mother. There is no absolute and outright gift of the money to the children. (Cf. Buchanan v. Little, 154 N. Y. 147.) Further, the indenture provides that the trust was to continue, until its purposes were accomplished, unaffected by the demise of the settlor.
So, too, must we reject the argument that the joint minority of the twins or the survivor of them is to be regarded as only one measuring life. Indeed, a problem might be presented in this regard if the twins were en ventre leur mere, and the possibility of a multiple birth could not be anticipated at the time of the creation of the trust. But here, when the trust was created, the twins were two years of age. They are two individuals and, hence, to count their joint minority as one Efe is to ignore reaEty. Bach had, and was known by aU to have, a separate individual existence. Hence, the joint minority or survivor provisions entail measuring the trust by two Eves in being.
It is urged, however, that this court penetrate the formal language of the instrument, ascertain the intent of the settlor, and, by the process of judicial excision, maintain the vitaEty of a major portion of the trust.
The rule for excising invaEd trust provisions, so clearly enunciated in Matter of Horner (237 N. Y. 489), depends on the principle of severabiEty. If the dominant purpose of the settlor is the creation of a single trust for more than two Eves in being, absolute ownership is iEegaEy suspended and the trust is void in its entirety. (Matter of Horner, supra; Central Trust Co. v. Egleston, 185 N. Y. 23; Leach v. Godwin, 198 N. Y. 35.) On the other hand, if the trust is séverable, we may preserve that which is good; and eliminate that part which is invaEd (1 Scott, Trusts, § 65.1, pp. 405-406).
It does not appear here that the trust is separable into distinct trusts for each of the children. There is no direction to pay over to each child his share of the principal when his interest under the trust comes to an end. (Matter of Horner, supra.)
The dominant purpose of the trust was simply to provide for the maintenance of the wife and three children. Considering this trust, then, as a family trust, it nevertheless is not *924 exempt from the operation of the rule against suspension of alienation. The cases (e.g., Matter of Horner, supra; Matter of Gorham, 283 N. Y. 399; Matter of Eveland, 284 N. Y. 64; Carrier v. Carrier, 226 N. Y. 114; Matter of Durand, 250 N. Y. 45; Bishop v. Bishop, 257 N. Y. 40), which have developed the doctrine of judicial excision, have sustained the dominant intent of the testator only where such intent was expressed within the limitations of the statutes. They have excised a secondary, subservient, and separable intent, which carried the trust beyond the legally permissible limits.
In the present trust indenture, the trust is measured by three lives. In order to save the trust, the court below has excised the life of the first wife. This is not a separating of the good from the bad, but rather the summary casting out of an integral part of the trust for the purpose of validating it. Such emasculation, which this court now stamps with approval, would permit any invalid trust created for more than two lives to be validated by the simple expedient of eliminating the offending life or lives. Such an interpretation placed on the trust by the court renders the statute nugatory. It legislates retroactively what the Legislature has seen fit only to legislate prospectively. The judicial surgery which this court now employs is not of the type countenanced by the earlier cases.
Nor can we say that the measuring life of the first wife is unnecessary. This was achieved below, by the removal of provisions for the support of the eldest son during his minority, if both twins should die before reaching majority. However, the keynote of the trust is not plurality, but unity. The settlor attempted to provide for his children during their minorities. Each of these children have an equal claim on his affection. These claims were discharged by equal treatment in the trust instrument. There is no evidence that the settlor intended to prefer one or more children over the others. Since this is so, it is improper to cast aside the contingency.
Nor can we cast aside the contingency on the theory that it is remote. Mortality tables, of course, indicate that the probabilities are excellent for children, now at the age of 10, to reach their majorities. However, in dealing with specific lives, and not with general averages, the contingency of death before a person reaches his majority is neither remote nor improbable despite the present status of the health and well- *925 being of the minors concerned. Such prophecies are without precedent.
The trust cannot be salvaged by the elimination of the life estates and accelerating the remainders (Oliver v. Wells, 254 N. Y. 451) since this would have the effect of converting contingent remainders to vested remainders, contrary to the settlor’s intent. (Matter of Durand, supra; Matter of Halsey, 286 N. Y. 154.)
Accordingly, the order of the Appellate Division should be reversed, and questions 1, 3 and 4 be answered in the affirmative, and question 2 answered in the negative.
Order affirmed, etc.